### LEWIS & JACKSON *v.* HUBBARD *et al.*

1. CONTRACT. *Notice.* Upon a sale of a machine, with special written warranty "guaranteeing it to do superior work and to be made of good material and durable, with proper care," with the further provision that "if the machine does not bear the guaranty, we (the warrantors) are to be notified of the same at once, and if we fail to make the machine work well, or do not furnish another that will answer the guaranty, it may be returned": *Held,* that before the purchasers can hold the warrantors liable on this contract, the latter must have notice according to its terms, after reasonable trial, to the end that they may have the privilege of making the machine work if they can, or supply its place with another.

2. SAME. *Same* If the time for testing the machine be extended by parol, the same obligation rests upon the purchaser to give notice after the expiration of the time as extended,—the contract not being changed in other respects.

#### FROM JEFFERSON.

Appeal in error from the Circuit Court of Jefferson county.   J. G. ROSE, J.

CORNICK & CORNICK for Lewis & Jackson.

O. C. KING for Hubbard.

MCFARLAND, J., delivered the opinion of the court.

This suit was commenced before a justice of the peace upon a note executed for the purchase of a thrashing machine.   The verdict and judgment in the Circuit Court were for the defendants.

The machine was sold by Lewis & Jackson, the

agents of H. G. Mead, who was the agent of the manufacturers. The warranty was in writing and as follows:

"Our machines are fully guaranteed to do superior work, as represented in our catalogue; to be made of good material, and durable, with proper care. If the machine does not bear the guarantee (after reasonable trial) we are to be notified of the same at once, and if we fail to make the machine work well, or do not furnish another that will answer the guaranty, it may be returned."

The sale was made about the 13th of July, 1873, and the machine delivered about that time. The note sued upon was of that date, and due at four months, for the first payment on the machine. Suit was brought upon the note the 28th of May, 1874, and judgment rendered by the justice, without objection, on the 3d of July, 1874, and execution stayed; but, on the 31st of December, 1874, the cause was taken up to the Circuit Court by *certiorari*.

In order to excuse this delay, the defendants and their witnesses testified that they threshed with the machine during the year 1873; that it was defective and did not do good work, but they thought at the time that it might be owing to the fact that the horses used were too light. Hubbard, one of the defendants, testifies that in the winter of 1873–4 he met Mead and told him of the defects of the machine, but proposed to keep it and try it during the threshing season of 1874, inasmuch as he supposed the defect might be in the horses, and that Mead agreed

to this.    Hubbard .proves that the same conversation and agreement was had with Jackson, one of the firm of Lewis and Jackson.    This testimony is denied by both Mead and Jackson, but we must take it that the jury has found for the defendant upon this question.    The defendants further testify that they tested the machine again in the year 1874, and that it proved a worse failure than before, and that it is worthless; but there is no proof that after the trial of the machine in the year 1874 there was any notice to the plaintiffs or offer to return it, but the same is still in the possession of the defendants.

As correctly charged by the Circuit Judge, both parties are bound by the terms of the written guaranty.    One of the stipulations was, that "if the machine does not bear the guaranty (after reasonable trial), we are to be notified of the same *at once,* and if we fail to make the machine work well, or do not furnish another that will answer the guaranty, it may be returned."    The plaintiffs must be held to make good their warranty in the manner and upon the terms they agreed to do so.    That is, if the machine did not give satisfaction they were to be *notified at once,* and they were then to have the privilege of remedying any defect so as to make the machine in accordance with their guarantee, or to furnish another machine, and if they failed to do this the machine sold might be returned.    One of the defendants testifies that he did notify the plaintiffs in the winter of 1873–4 that the machine had not done well, and proposed to return it, but that it was agreed that they

were to try the machine during another threshing season, as he was not himself certain but that the defect was in the horses used.

The only legitimate effect of this testimony would, at most, be to extend the time for the defendants to test the machine. But for this agreement, they should have tested it within a reasonable time during the year 1873, and, in the language of the contract, notified the plaintiffs "*at once*" if it failed to give satisfaction; but, by the alleged agreement, they were allowed to give it a further trial during the season of 1874. If, upon this further test, the machine still failed to give satisfaction, it was then the duty of the defendants to give the plaintiffs notice at once, to the end that the plaintiffs might then have the opportunity to cure the defect or supply a new machine, in accordance with the contract. But, according to the proof, after making some effort to run the machine in the year 1874, the defendants abandoned it and stored it away, but gave the plaintiffs no further notice and made no further offer to return it.

The Circuit Judge held that a failure to make an offer to return the machine deprived the defendants of the right to return it, and amounted to an election to keep it at what it was reasonably worth; and in that view, if the proof showed the machine not to be as represented, the defendants were entitled to an abatement to the extent of the difference between the contract price and the actual value of the machine. The jury have estimated this difference at the full price, as they have allowed nothing. The

charge would be correct in the case of an ordinary warranty without the special terms in favor of the warrantor found in this case; but, under the special stipulations referred to, the defendants had not the right to abandon the machine without notice to the plaintiffs, and without giving them an opportunity to cure the defect or supply another machine, and at the same time require them to make good the entire price, although the defendants testify that the machine is worthless, for all we know the plaintiffs might have cured the defect, or at least made it valuable to themselves, if they had had the opportunity.

We think the case was not submitted under a proper charge, and beside, the testimony does not support a verdict for the defendants.

The judgment will be reversed and a new trial awarded.